**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Jones, | No. CV-23-01564-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Vector Technology Systems LLC, et al., | |
| Defendants. | |

Plaintiff Stephen Jones filed this suit against his former employer and its owners seeking to recover unpaid wages. Most of the current defendants first learned of this suit in August 2023. Since then, those defendants opted not to defend. Only when entry of default judgment was imminent did they file motions seeking additional delay. The motions attempting to delay final judgment are denied and Jones's request for default judgment is granted.

I. **Factual and Procedural Background**

On August 2, 2023, plaintiff Stephen Jones filed his original complaint. The complaint identified the following defendants: Vector Technology Systems, LLC; the Susan Cohn Revocable Trust; Mark Cohn; Susan Cohn; and John and Jane Doe as trustees of the Susan Cohn Revocable Trust.[1] (Doc. 1 at 1.) That complaint alleged Jones began working for Vector in May 2022 but resigned in July 2022 after not being paid wages he was owed. Jones alleged claims under federal and state law for unpaid wages. Jones also

---

[1] The complaint also named Robert Moles as a defendant, but Jones dismissed Moles approximately one month after filing the complaint. (Doc. 6.)

alleged a breach of contract claim against Mark Cohn, one of the owners of Vector. (Doc. 1 at 9.) The complaint explained the Susan Cohn Revocable Trust had been named as a defendant because it "owns interest in [Vector]." (Doc. 1 at 2.)

Jones filed proofs of service for Vector, Mark Cohn, Susan Cohn, and the Susan Cohn Revocable Trust. (Doc. 7.) Service was completed by personally serving Mark Cohn on his own behalf and on behalf of the other defendants. No defendant responded to the complaint and Jones applied for entry of default regarding all four defendants. (Doc. 8.) In December 2023, the court directed the Clerk of Court to enter the defaults of Vector, Mark Cohn, and Susan Cohn. (Doc. 9.) But the court noted "the Susan Cohn Revocable Trust lacks the capacity to be sued and could not be a proper party to this case." (Doc. 9 at 1.) The proper defendant would be the trustees of that trust and the court directed Jones to file proof that the trustees had been served. (Doc. 9 at 3.)

In April 2024, Jones amended his complaint to name as a defendant Susan Cohn in her capacity as the trustee of the Susan Cohn Revocable Trust. (Doc. 15.) The amended complaint contained no substantive changes beyond naming Susan Cohn in her trustee capacity. (Doc. 15-1.) The amended complaint was served on Susan Cohn in her trustee capacity, but it was not served on Vector, Mark Cohn, or Susan Cohn in her individual capacity. There was no response to the amended complaint and the Clerk of Court entered the default of Susan Cohn in her trustee capacity. (Doc. 22.) A few days after that default was entered, Susan Cohn in her trustee capacity filed a motion to dismiss and a motion to set aside the default. (Doc. 23, 24.) That motion was not filed through counsel. The court struck those filings because "Susan Cohn, as trustee of the Susan Cohn Revocable Trust, must be represented by counsel." (Doc. 25 at 2.)

The order striking the filings was issued on June 18, 2024, and no further activity occurred until August 14, 2024. On that date the court ordered Jones to establish why this case should not be dismissed for failure to prosecute. Anticipating Jones might wish to file a motion for default judgment, the court ordered any such motion be filed no later than August 26, 2024. (Doc. 27.) Jones filed a motion for default judgment by the deadline. That

motion explained Jones was no longer interested in pursuing relief against Susan Cohn in her trustee capacity. Instead, Jones sought default judgment against Vector, Mark Cohn, and Susan Cohn in her individual capacity. (Doc. 28 at 5.)

The motion for default judgment led to a flurry of confusing filings. Three days after the motion for default judgment was filed, Susan Cohn in her individual capacity filed a document titled "Response to Motion for Default Judgment and Request to Dismiss Case Against Susan Cohn." (Doc. 29.) That motion argued Susan Cohn in her individual capacity had not been served (Doc. 29 at 2.) As explained in the subsequent nine filings by the parties, Mark Cohn and Susan Cohn in their individual capacities ("the Cohns") both believed that default judgment could not be entered against them because they had not been served with the amended complaint. (Doc. 30–Doc. 38.) The only explanation offered for the Cohns's failure to participate earlier in the case was their defaults were entered "during a time that the parties were having settlement discussions."[2] (Doc. 33 at 1.)

## II. The Cohns Provide No Basis to Vacate the Defaults

The Cohns argue their defaults should be vacated because Jones failed to serve them again when he amended his complaint. This argument is based on a misunderstanding of when service of an amended complaint is required.

The Cohns do not dispute they were served with the original complaint, nor do they dispute that their defaults were entered after they failed to respond to that complaint. After their defaults were entered, the amended complaint was filed and served only on Susan Cohn in her trustee capacity. The Cohns argue their previous defaults are irrelevant because "[t]he case effectively starts anew based on the amended complaint." (Doc. 31 at 2.)

Federal Rule of Civil Procedure 5 outlines when and how pleadings and other papers other than an initial complaint must be served. In general, a plaintiff must serve defendants with any "pleading filed after the original complaint." Fed. R. Civ. P. 5(a)(1)(B). But there

---

[2] Some of the Cohns's filings regarding the default judgment motion included citations to cases that do not exist. (Doc. 31 at 1-2.) Jones pointed this out and the only explanation offered by the Cohns was they "believe[d] that [the] prior citations were correct, however, it is clear that they correctly stated the current state of the law." (Doc. 36 at 2; Doc. 37 at 2.)

is an exception to that requirement when a party "fails to appear." Pursuant to Rule 5(a)(2), "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." In other words, if a defendant's default is entered and an amended complaint subsequently filed, that amended complaint need not be served on that defendant unless the amended complaint asserts a new claim against that defendant. *See Blair v. City of Worcester*, 522 F.3d 105, 109 (1st Cir. 2008) ("[T]he amended complaint did not in fact contain a new claim for relief, and therefore did not require service under Rule 5(a)(2).").

When Jones filed his amended complaint, Vector and the Cohns were in default for failing to appear. And Jones's amended complaint did not assert any new claim against Vector or the Cohns. Jones was therefore not required to serve the amended complaint on Vector or the Cohns.[3] The Cohns do not offer any other basis for setting aside their defaults and the record establishes their actions have been inappropriate attempts to delay resolution of this matter.

The Cohns's defaults were entered on January 18, 2024. The Cohns admit they knew when that occurred and decided not to act. (Doc. 36 at 5.) On June 3, 2024, the Clerk of Court entered the default of Susan Cohn in her trustee capacity. (Doc. 22.) That prompted Susan Cohn to file a motion to set aside the entry of default. (Doc. 24.) The court denied that motion because it was not filed through counsel. In doing so, the court explained the "distinct legal concepts [of] (1) default and (2) default judgment." (Doc. 25 at 2.) At that time, all defendants had been defaulted but there had been no default judgment. The court provided a clear warning to the Cohns "[u]nless any Defendant (properly) files a motion to set aside the default, the next step in this litigation will be for Plaintiff to file a motion for default judgment." (Doc. 25 at 2.) Despite that warning, the Cohns took no action for more than three months.

---

[3] Some of the confusion comes from the Cohns referring to the entry of their defaults as equivalent to the entry of default judgment against them. (Doc. 32 at 1.) Obtaining a default judgment requires two steps: 1) entry of a defendant's default and 2) entry of default judgment against that defendant. *See Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009). The court already entered the Cohns's defaults, but no default judgment has been entered.

- 4 -

Jones filed his motion for default judgment on August 26, 2024, and on September 9, 2024, the Cohns moved to set aside their defaults. (Doc. 31, 32.) Those motions argued the Cohns believed the failure to serve them with the amended complaint meant default judgment could not be entered against them. As set forth above, governing law did not require service of the amended complaint. More importantly, however, the Cohns's explanation is not credible. The court specifically warned them the next step would be default judgment, yet they still took no action. Their motions to set aside the defaults cited to non-existent authority. And despite having previously indicated he received a copy of the application for default and instructed Jones to communicate with him regarding default judgment only through an attorney who represented him (Doc. 35-1 at 2), Mark Cohn later avowed he did not receive the application and only retained legal counsel to try to negotiate a settlement (Doc. 38 at 5). These actions are sufficient to find the Cohns "*intentionally failed to answer*" because they were hoping to delay resolution of this case. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (quotation marks and citation omitted). There is no basis to set aside the default and the only remaining issue is whether Jones is entitled to default judgment.

### III.   Default Judgment

The Ninth Circuit has established seven factors a district court may consider when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). On balance these factors weigh in favor of entering default judgment here.[4]

---

[4] Analysis of four of the seven factors is the same in every case where no defendant has participated in the litigation. In that situation, the first, fifth, and sixth *Eitel* factors always weigh in favor of default judgment while the seventh factor always weighs against default judgment. *Cf. Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *4 (D. Ariz. Mar. 27, 2020) (noting "the first, fifth, sixth, and seventh factors

### A. Possible Prejudice to Jones

This first factor weighs in favor of default judgment because if "default judgment is not granted, [Jones] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### B. Merits of the Claim and Sufficiency of the Complaint

The second and third factors involve the merits of the claim and the sufficiency of the complaint. These factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

In his motion for default judgment Jones abandons his claims for unlawful withholding of wages, breach of contract, and breach of the implied covenant of good faith and fair dealing. (Doc. 28 at 10, 13.) That leaves a claim under the Fair Labor Standards Act ("FLSA") and a claim under Arizona law for failure to pay minimum wage. The motion for default judgment also abandons any request for relief against Susan Cohn in her trustee capacity. (Doc. 28 at 5.) Thus, the remaining defendants are Vector, Mark Cohn, and Susan Cohn in her individual capacity.

Jones's FLSA claim requires allegations "(1) [he] was an employee of Defendants; (2) [he] was covered under the FLSA, and (3) Defendants failed to pay [him] minimum wage or overtime wages." *Leyva v. Avila*, 634 F. Supp. 3d 670, 675 (D. Ariz. 2022). Similarly, Jones's Arizona minimum wage act claim requires allegations establishing he was an employee who was not paid the state minimum wage. A.R.S. §§ 23-363(A), 23-364(E). The complaint contains sufficient factual allegations supporting both claims.

The amended complaint alleges Jones began his work for Vector on May 10, 2022. (Doc. 17 at 3.) Vector qualified as an "employer" as that term is used in the FLSA because Vector's employees were "engaged in commerce." (Doc. 17 at 5.) Vector also qualified as an "employer" as that term is used under Arizona law. (Doc. 17 at 6.) Jones "worked extensive hours and satisfactorily performed all his job duties." (Doc. 17 at 3.) The work

---

are easily addressed"). Here, the Cohns did not participate in the litigation prior to default judgment being sought and the analysis of these four factors can be brief.

- 6 -

Jones performed was under all the defendants' direction and with their knowledge. (Doc. 17 at 6.) Jones received paychecks for his work from May 2022 through June 10, 2022. (Doc. 17 at 3.) He received a paycheck for work for the period between June 10, 2022, and June 23, 2022, but that check was returned due to insufficient funds. Jones notified Mark Cohn the check had been returned and Mark Cohn "repeatedly promised [Jones] that he would get the issue corrected." (Doc. 17 at 4.) For the next few weeks Mark Cohn gave Jones "constant assurances" he would be paid but, eventually, on July 27, 2022, Jones resigned. (Doc. 17 at 4.) After leaving his employment, Jones continued to receive communications from Mark Cohn indicating Mark Cohn acknowledged the unpaid wages and promised they would be paid soon. In the end, Jones "never received *any* pay for the work performed from June 13, 2022, through his separation date of July 27, 2022." (Doc. 17 at 5.)

These allegations establish a strong claim for unpaid wages. Jones performed work from June 13 to July 27 without receiving any pay. Mark Cohn's communications establish he knew Jones was owed wages. And Jones alleged each of the remaining defendants exercised "control over the nature and structure of the employment relationship, or economic control over the relationship," such that each defendant can be liable. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). Mark Cohn's communications establish the failure to pay Jones the wages he was owed was willful. *See Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (an FLSA violation is willful when "the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by the [FLSA]").

The factors addressed to the merits of the claims and the sufficiency of the complaint weigh in favor of default judgment.

**C. Amount in Controversy**

The fourth factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Here, Jones is seeking a total

award of approximately $11,000 for five and a half weeks when he worked without pay. (Doc. 28 at 11.) That figure is based on a relatively small amount of wages increased by the statutorily-authorized amount for unlawfully withheld wages. The amount in controversy is directly tied to the wages Jones should have been paid. This factor supports entry of default judgment.

### D. Dispute Over Material Facts

The fifth factor is whether there are any disputes over material facts. Vector and the Cohns's failure to participate in a meaningful way means there is no indication of any dispute regarding material facts. This factor weighs in favor of default judgment.

### E. Excusable Neglect

The sixth factor looks to whether Vector and the Cohns's behavior might be due to excusable neglect. Vector and the Cohns were properly served with summonses and the complaint and have been aware of this suit for well over a year. From their filings, it appears the Cohns intentionally chose not to answer the original complaint because they were engaged in settlement negotiations. Thus, there is very little possibility that the Cohns's behavior could be attributable to excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendants' failure to respond to complaint could not "be attributable to excusable neglect" because "[a]ll were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion."). This factor supports entry of default judgment.

### F. Policy Favoring Decisions on the Merits

The seventh factor recognizes a preference for resolving matters on their merits. This factor, as always, weighs against entry of default judgment. "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (quotation marks and citation omitted). The Cohns's intentional failure to respond to the original complaint, followed by their baseless requests to set aside their defaults, indicates it would be "impractical, if not impossible," to reach the merits. *Id.* Thus, this factor weighs against

default judgment but it is not sufficient to preclude entry of default judgment.

### G. Default Judgment is Merited

Almost all of the factors support entry of default judgment. Accordingly, default judgment is appropriate and the only remaining issue is the amount of damages.

## IV. Damages

The burden is on Jones to prove the amount of his damages. *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1131 (C.D. Cal. 2023). Jones submitted an affidavit stating he "worked a minimum of fifty (50) hours per week throughout [his] employment," except for the final week when he worked twenty hours. (Doc. 28-4 at 3.) Jones did not receive any pay for his final five and a half weeks of employment. Thus, Jones is entitled to 220 hours of regular pay and 50 hours of overtime.[5] These hours multiplied by the applicable regular and overtime hourly rates under federal law mean Jones is owed $2,175.25 under the FLSA. The regular and overtime hourly rates under Arizona law mean Jones is owed $3,776 under Arizona's wage laws. (Doc. 28-4 at 5.) Arizona law allows for an additional award of twice the underpaid wages (*i.e.*, $3,776 x 2=$7,552), for a total of $11,328.[6] A.R.S. § 23-364(G).

Jones does not seek an award under both the FLSA and Arizona law. Rather, he seeks an award of the larger amount, *i.e.*, $11,328. Jones also seeks an award of prejudgment interest and attorneys' fees and costs, as permitted by A.R.S. § 23-364(G). "Generally, in actions within a district court's supplemental jurisdiction, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." *LL Liquor, Inc. v. Montana*, 835 F. App'x 917, 919 (9th Cir. 2020) (quotation marks omitted). Under the FLSA, prejudgment interest cannot be awarded if the plaintiff receives liquidated damages. *Cf. Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). Jones does not address whether this same rule should apply in the context of an award under

---

[5] This is calculated as five weeks at 40 hours per week for 200 hours and Jones worked 20 hours his final week, for a total of 220 hours. The overtime hours are for the ten hours of overtime Jones worked during the five weeks prior to his last week.
[6] Jones's affidavit contains incorrect figures. (Doc. 28-4 at 5.) The correct figures are reflected in the motion itself. (Doc. 28 at 12.)

- 9 -

A.R.S. § 23-364(G). Moreover, Jones does not provide a proposed calculation if prejudgment interest is allowed. *Cf. Schade v. Diethrich*, 760 P.2d 1050, 1064 (Ariz. 1988) ("prejudgment interest is calculated only on the actual severance pay, not on the penalty amount").

Because of the uncertainty regarding the legality and amount of prejudgment interest, the court will award the amount Jones requested without accounting for such interest. Jones may file a motion addressing the legality and amount of prejudgment interest if he believes it is appropriate to do so. Postjudgment interest at the federal statutory rate is mandatory. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). Finally, Jones may file a motion seeking an award of attorneys' fees within fourteen days of the entry of judgment provided that motion complies with Local Rule 54.2.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss Case (Doc. 29) and Motions to Set Aside First Default Judgment (Doc. 31, 32) are **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Default Judgment (Doc. 28) is **GRANTED**. The Clerk of Court is directed to enter judgment in the amount of $11,328 against defendants Vector Technology Systems LLC, Mark Cohn, and Susan Cohn. These defendants are jointly and severally liable for the entire amount. Postjudgment interest at the statutory rate shall apply. All claims other than the Arizona wage claim and Susan Cohn in her trustee capacity are **DISMISSED WITH PREJUDICE**.

Dated this 3rd day of January, 2025.

Honorable Krissa M. Lanham
United States District Judge